IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
FEB 1 0 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

BRANDON CHANDLER,

Plaintiff,

v.

JO ANNE BARNHART, Commissioner
of Social Security,

Defendant.

Case No. 04 C 1402

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Yolanda Chandler sought supplemental security income disability benefits ("SSI") on behalf of her son, Plaintiff Brandon Chandler (hereinafter, "Plaintiff"). Defendant Commissioner of Social Security (hereinafter, "Defendant") denied the Plaintiff's application. Before the Court are the parties' cross-motions for summary judgment. The Court treats Plaintiff's motion as an order seeking to reverse the final decision, and Defendant's motion as an order seeking to affirm the decision. For the following reasons, the Court **denies** Plaintiff's motion and **grants** Defendant's motion.

### I. BACKGROUND

On May 2, 2002, Ms. Chandler filed an application for SSI on behalf of her son based on his learning disability. Plaintiff's claims were initially denied in August 2002, and the application for reconsideration was denied in September 2002. In July 2003, an Administrative Law Judge (the "ALJ") held a hearing and conducted a de novo review of Plaintiff's claim. The ALJ issued a written

opinion denying Plaintiff's application on August 28, 2003. The Appeals Council subsequently denied Plaintiff's request for review. Consequently, the ALJ's decision became final.

## A. Educational and Medical History

Plaintiff began experiencing academic problems as a seventh-grade student during the 2001-2002 school year. During this year, Plaintiff was absent 41.5 days, tardy 19 times, and received grades of mostly D's and F's in the third quarter. (R. 150). He was also disciplined or suspended six times. (R. 199-201, 205-07). Plaintiff was enrolled in regular classes.

During the following school year, Plaintiff was suspended or disciplined seven times for poor behavior. (R. 196-98, 203, 208-12). In a 2002-2003 school year individualized education program (the "IEP") dated February 2003, it was determined that Plaintiff was eligible for special education. (R. 173). He had learning disabilities in math, written language, reading, peer and adult relationships, task completion and attendance, and was performing at a fourth grade level in reading and writing and a third grade level in math. (R. 183, 216). The IEP found that Plaintiff sought attention in a negative way and was at risk for attention deficit hyperactive disorder ("ADHD"). (R. 216, 221, 182). Plaintiff's school recommended that he repeat the eighth grade. (R. 43).

On July 10, 2002, Dr. William Hilger, Ph.D., evaluated Plaintiff and concluded that he was "purposely putting forth a poor level of effort and attempting to make himself appear less capable than he may

actually be. He certainly did not appear mentally retarded as his test results would suggest." (R. 152). Although Plaintiff scored a full scale IQ of 50, Dr. Hilger disregarded these scores in light of Plaintiff's poor level of effort. (R. 152, 155). Dr. Hilger indicated that he believed that Plaintiff had oppositional defiant disorder ("ODD"), malingering disorder, probable borderline or higher intellectual functioning, and no serious health problems. (R. 156). Dr. Hilger also concluded that Ms. Chandler exerted little control over Plaintiff who is "sorely in need of proper discipline, structure, and setting of limits." (R. 156).

In July and September 2002, two state psychologists reviewed Plaintiff's records, including Dr. Hilger's report and Plaintiff's school records. Each psychologist individually determined that Plaintiff's impairment(s) were severe, but did not meet, or medically or functionally equal, the listings. (R. 158, 165). The psychologists also determined that Plaintiff had less than marked limitations in the domains of acquiring information, tasks, and interacting. (R. 160, 167). Plaintiff had no limitations in the remaining domains. (R. 161, 168).

The school psychologist, Deborah Stickler, interviewed Plaintiff in November and December 2002. Ms. Stickler found Plaintiff "cooperative and attentive" and concluded that he "appeared to try his best and willingly attempted all tasks presented." (R. 175-78). Plaintiff scored in the average range on the Cognitive Assessment System test, and on others scales such as planning and the successive

scale. (R. 175). Plaintiff's abilities in reading and math were in the low range and very low range, respectively. (R. 176). Plaintiff had no signs of mental retardation, and reported to Ms. Stickler that he enjoyed school and had friends.

### B. ALJ Hearing

The ALJ conducted a hearing on July 17, 2003. The ALJ questioned Plaintiff and Ms. Chandler at length about Plaintiff's learning disabilities and problems in school. Plaintiff, fourteen at the time, testified that he took special education classes. (R. 32-33). Plaintiff stated that he liked school and was doing well in several classes, but that his grades had begun slipping. (R. 34-35, 54). Plaintiff testified that he sometimes argued with his classmates or others when they picked fights or said bad things. (R. 36-37, 52). Plaintiff said he played sports with his relatives and indicated he would be attending summer school. (R. 41).

Ms. Chandler also testified at the hearing, stating that Plaintiff had been displaying learning difficulties in school for a year and that he was repeating the eighth grade. (R. 43). She further stated that Plaintiff misbehaved often at school, talked back to his teachers, did not get along with his peers, and fussed at home. (R. 43-44).

### C. ALJ Decision

After the hearing and a thorough review of the record, the ALJ issued a written opinion denying Plaintiff's SSI application on August 28, 2003. Pursuant to 20 C.F.R. § 416.924, the ALJ conducted

the three-step evaluation to determine if Plaintiff was "disabled" and eligible for SSI. The ALJ determined that Plaintiff has ODD and borderline intellectual functioning, which were "severe" under the Act, but that such impairments did not meet or equal any of the listed impairments. (R. 14). Accordingly, the ALJ determined that Plaintiff was not "disabled" under the Act. In so holding, the ALJ reviewed Plaintiff's medical history, including Ms. Stickler's exam, Dr. Hilger's examination report, and the two state psychologists' reports. The ALJ concluded that "there appears to be a deliberate attempt in this case to have the claimant portrayed as being intellectually worse than he really is." (R. 15). The ALJ concluded that "the evidence does not show that the claimant has any extreme or marked limitations which would interfere with his ability to function." (R. 16).

Only three domains are at issue here, which are discussed below. Regarding acquiring and using information, the ALJ stated that Plaintiff was enrolled in regular classes until the 2002-2003 school year and he had completed the prior seven years of school in a satisfactory manner. (R. 15). He was not held back due to academic difficulties. The ALJ discounted Plaintiff's IQ test scores due to Dr. Hilger's conclusion that the scores were invalid based upon Plaintiff's deliberate attempts to score poorly and exert minimal effort. (R. 15). The ALJ found that Plaintiff had a possible learning disorder, but that the disorder was not at the level of a marked impairment (R. 16).

With regard to attending and completing tasks, the ALJ concluded that Plaintiff had the ability to attend to and complete tasks when he chose to and that his behavior problems were volitional. (R. 17). Plaintiff had been placed in special education classes. He was undisciplined, not obeying his mother at home or his teachers at school. (R. 16). Despite this, Plaintiff was very friendly and cooperative in his interview with Ms. Stickler and willingly attempted all tasks requested of him. (R. 16-17). Thus, his limitation in this domain was less than marked.

Regarding interacting with others, the ALJ noted that Plaintiff had difficulty getting along with others. (R. 17). The ALJ found no evidence in the record to indicate severe physical problems or hyperactivity. (R. 17). Although Plaintiff has a discipline problem, the ALJ did not find sufficient evidence in the record to demonstrate a marked impairment in social development or significant limitation in this domain. (R. 17).

Upon finding no limitations in the remaining domains, the ALJ determined Plaintiff was not "disabled" and denied his SSI application. The ALJ's decision became the final decision when the Appeals Counsel declined the review request.

## II.  **LEGAL STANDARD**

The Court is limited to reviewing only whether the record contains substantial evidence to support the agency's decision, and whether the agency applied proper legal standards. See Ehrhart v. Sec. of Health & Human Serv., 969 F.2d 534, 538 (7th Cir. 1992).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court will not "re-evaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." Luna v. Shalala, 22 F.3d 687, 689 (7th Cir. 1994).

### III. DISCUSSION

Under the Social Security Act, 42 U.S.C. § 1382 (the "Act"), a person under age eighteen is "disabled" if he is unable to engage in any substantial gainful activity and has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i)(ii).

The ALJ conducts a three-part test to determine whether a child is disabled under the Act. See 20 C.F.R. § 416.924, First, the ALJ determines if a child is engaged in substantial gainful activity. Second, the ALJ determines whether the child has a severe impairment. Finally, if the child has a severe impairment, the ALJ determines if the impairment(s) meet, medically equal, or functionally equal an impairment in the listings and the duration requirements of the listing. See id. § 416.924(a). If so, the child is disabled. See id. § 416.924(d).

To equal the listings, the impairments must result in "marked" limitations in two domains of functioning, a limitation that interferes seriously with the child's ability to function, or an "extreme" limitation in one domain, no meaningful function in a category due to the limitation. See id. §§ 416.926a(a), (c). The ALJ considers how a child functions in the following six domains: (1) acquiring and using information (the "Information Domain"); (2) attending and completing tasks (the "Tasks Domain"); (3) interacting and relating with others (the "Interaction Domain"); (4) moving about and manipulating objects; (5) self-care; and (6) health and physical well-being. See id. §416.926a(b)(1).

Plaintiff alleges that the ALJ's decision should be reversed because he erred in concluding that Plaintiff did not have a marked limitation in the Information, Interaction, and Tasks Domains, and because the ALJ's determination is internally inconsistent. (Pl. Supp. Brief, at 9). Defendant responds that the ALJ's determination should be upheld because it was "substantially supported by the medical and other evidence in the record," including the reports of Dr. Hilger, Ms. Stickler, the state psychologists, and the school records. (Def. Supp. Br. at 7).

Here, it is undisputed that the ALJ applied the correct legal standard, that Plaintiff has two "severe" impairments -- ODD and borderline intellectual functioning. The parties do not contest that such impairments do not meet or medically equal a 20 C.F.R. § 416.926a(b)(1) listing. The dispute here is over the ALJ's

conclusion that Plaintiff's impairments do not functionally equal a listing.

The Information Domain addresses a child's ability to learn information and use the information learned. See id. § 416.926a(g). Plaintiff contends the ALJ erred by not considering the effect of Plaintiff's ODD on this domain and by minimizing Plaintiff's learning disorder. Further, Plaintiff's "severe discrepancy" between math and reading skills "shows that there is a genuine problem" in the Information Domain. (Pl. Brief, at 11-12). In connection with this domain, the ALJ acknowledged the previous determination of learning disability by the IEP. Dr. Hilger did not conclude that Plaintiff had a learning disability, only borderline or higher intellectual functioning. The ALJ discussed the evidentiary basis for his conclusion that Plaintiff's limitation was less than marked in this domain. The ALJ stated that Plaintiff was not a good student, which is clearly supported by the record - Plaintiff was absent and tardy many times and did not get along well with others. Despite this, Plaintiff progressed in regular classes for seven years, performed at a fair level in some subjects, and had normal abilities in many, but not all, areas of the testing performed by the school district. Further, Plaintiff himself testified that he enjoyed school and was doing well in writing, social science, science, and computer research. Ms. Chandler also testified Plaintiff did okay in some subjects. The Court concludes there is substantial evidence in the

record to support the ALJ's conclusion that Plaintiff's did not have a marked limitation in the Information Domain.

The Tasks Domain addresses a child's ability to focus and maintain attention, "begin, carry through, and finish your activities, including the pace and the ease of change." Id. § 416.926a(h). Plaintiff contends that the ALJ erred by failing to consider the impact of Plaintiff's ODD on this domain. The Court disagrees. In evaluating this domain, the ALJ expressly noted that Plaintiff "had many episodes of disruptions and suspension in the last school year . . . [and] is very undisciplined" and does not like to listen to others. (R. 16). The ALJ also noted Ms. Stickler's evaluation that Plaintiff was "very friendly and cooperative" and willingly attempted all tasks asked of him. (R. 16). There was also evidence that Plaintiff has friends, plays sports with relatives, and is able to handle homework and chores when he chooses. Accordingly, the ALJ concluded, "The record very strongly indicates that in this case, the claimant's behavior problems are strictly volitional. As a result, in this domain, I will find that the claimant has a less than marked limitation." (R. 17). This conclusion is also supported by Dr. Hilger's evaluation and the two state psychologists' reports. There is substantial evidence in the record to support the ALJ's conclusion, and the Court will not "re-evaluate the facts, reweigh the evidence" or substitute its judgment for the ALJ. Luna, 22 F.3d at 689.

The Interactive Domain addresses a child's ability to "initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." See id. § 416.926a(i). Plaintiff contends the ALJ's conclusion as to this domain is not supported by substantial evidence and is not adequately articulated. (Pl. Brief, at 9-10). Further, Plaintiff contends the ALJ erred in concluding that Plaintiff did not have ADHD.

The ALJ acknowledged that Plaintiff has a discipline problem, and has a hard time getting along with others. The ALJ noted, however, that there were no reports of severe physical problems or hyperactivity (ADHD) in the record, and the evidence presented did not amount to a marked impairment in social development. (R. 17). Accordingly, "absent any time of corroborating evidence, it cannot be found that the claimant is limited in this area." (R. 17).

As to Plaintiff's ADHD allegation, the Court notes that none of the psychologists who examined Plaintiff in connection with this case, including Dr. Hilger, Ms. Stickler, and the two state psychologists, concluded that Plaintiff had ADHD. In fact, the only reference to the hyperactivity condition at all was the IEP, which is not a medical opinion, and only stated that Plaintiff was "at risk" for ADHD. Even the SSI application was based entirely on Plaintiff's purported learning disability. Similarly, as discussed, Dr. Hilger did not diagnose Plaintiff with a learning disability, only with

probable borderline intellectual functioning. Additional evidence that supports the ALJ's conclusion was the fact that Plaintiff was in regular classes for seven years, and the two state psychologists both determined that Plaintiff did not have a marked limitation in this, or other domains. It is reasonable and appropriate for an ALJ to rely upon the opinions of psychologists. See Flener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004). The Court concludes that there is substantial evidence in the record to support the ALJ's determination.

Finally, Plaintiff alleges that the decision should be reversed because the ALJ's conclusion that Plaintiff's behavior problems were volitional is inconsistent with an ODD limitation. As previously discussed, the ALJ specifically articulated the evidentiary basis for his conclusion that Plaintiff's ODD limitation did not rise to the level of a marked restriction, and that Plaintiff's behavioral problems were volitional. Of significance, Dr. Hilger specifically concluded that Plaintiff's test results were incorrect because he was purposely exerting a poor effort on the test and trying to appear worse than he was -- a volitional effort to perform poorly. The ALJ was reasonable in relying on Dr. Hilger's evaluation. See Flener, 361 F.3d at 448. The ALJ also relied upon the testimony of Ms. Stickler, who testified that Plaintiff was friendly and cooperative. "Teachers and parents who observe a child's behavior may provide substantial evidence of a mental disorder, or the lack thereof." Id. Other evidence in the record supports the conclusion that in this

case, Plaintiff acted volitionally. The Court concludes that this determination was not inherently inconsistent, and is supported by substantial evidence in the record.

### IV. CONCLUSION

The Court affirms the ALJ decision denying SSI because the record in this case contains substantial evidence to support the ALJ's decision that Plaintiff does not have a "disability" under the Act, and the ALJ applied the proper legal standard. See Ehrhart, 969 F.2d at 538. Accordingly, the Plaintiff's Motion for Summary Judgment is **DENIED,** and the Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: February 10, 2005